STRODE, Administrator of CREGHAN, Respondent,
v. FROMMEYER, Appellant.

St. Louis Court of Appeals, November 14, 1905.

1. **VARIANCE: Waiver.** Where an amended petition was filed
which was a departure from the original petition, and an an-
swer filed to the amended petition, the cause will not be re-
versed on the ground that a motion to strike out the amended
petition, filed after answering, was overruled.

2. **WITNESSES: Adverse Party as Witness: Wife Witness
Against Her Husband.** Under section 4654, Revised Statutes of
1899, an adverse party may be compelled to testify, but where
a husband and wife are parties defendant, the plaintiff can com-
pel the wife to testify under that statute only against herself
and not against her husband, if she was not shown to have
been her husband's agent.

3. ———: ———: ———: **One Party to Cause of Action Dead.**
Where a party makes a witness of an adversary who otherwise
would be incompetent because the matter in controversy re-
lated to a transaction between the witness and a deceased
party, the witness becomes qualified to testify as any other com-
petent witness.

Appeal from St. Louis City Circuit Court.—*Hon. War-
wick Hough,* Judge.

REVERSED AND REMANDED.

*Carl Otto* for appellants.

Defendant was placed by plaintiff upon the witness
stand and minutely questioned as to transactions be-
tween deceased and himself and was wrongfully, by the
court, refused permission to explain same or tell his
story, and for this clearly the cause should be reversed
and remanded. Tomlinson v. Ellison, 104 Mo. 105, 16
S. W. 201; Hollman v. Lange, 143 Mo. 100 and 107, 44
S. W. 752; Borgess v. Vette, 142 Mo. 560, 44 S. W. 754;
*In re* Soulard Estate, 141 Mo. 642, 43 S. W. 617; Rice v.

Waddill, 168 Mo. 99, 67 S. W. 605; Hume v. Hopkins, 140 Mo. 65, 41 S. W. 784; Layson v. Cooper, 174 Mo. 211, 73 S. W. 472; Ladd v. Williams, 104 Mo. 390; Tierney v. Hannon, 81 Mo. App. 488; Saettele v. Ins. Co., 86 Mo. App. 156; Hoelm v. Struttmann, 71 Mo. App. 399; *In re* Imboden, 86 S. W. 263.

*O. J. Mudd* and *Bland & Cave* for respondent.

It does not appear from the record that the court refused to receive competent and material testimony offered to be given by the defendant, Frank Frommeyer. Gaskey v. City of La Belle, 101 Mo. App. l. c. 598; Ruschenberg v. Railroad, 161 Mo. l. c. 81; State v. Goddard, 163 Mo. l. c. 227; Morton v. Heidorn, 135 Mo. l. c. 614, 37 S. W. 504; Hickman v. Green, 123 Mo. l. c. 179, 22 S. W. 455; 27 S. W. 440; The State v. Douglas, 81 Mo. l. c: 235; Bank v. Aull, 80 Mo. l. c. 202; Wilson v. Board of Education, 63 Mo. l. c. 141; McCormick v. City, 166 Mo. l. c. 338, 65 S. W. 1038. The defendant, Frank Frommeyer, voluntarily and without objection filed his answer to the second amended petition, and only moved to strike the same out after the case was called for trial. Under this state of facts it is immaterial whether the last amended petition was a departure or whether the original petition stated a cause of action or not. Bricken v. Cross, 163 Mo. 457, 64 S. W. 99; Phillips v. Barnes, 105 Mo. App. 421, 80 S. W. 43.

GOODE, J.—Plaintiff is the public administrator of the city of St. Louis and as such has charge of the estate of Mary Creghan, deceased, who departed this life September 3, 1903. During five years prior to her death Mrs. Creghan resided in the home of the defendant .Frank Frommeyer, whose wife, Mary, was her daughter. Besides this daughter, Mrs. Creghan left surviving her several grandchildren, daughters of John B. Marquitz and his wife (another daughter who had died at an earlier date). In 1889 Mrs. Creghan owned

a farm which she sold during that year to a man named Tiemeyer for $2,000. Tiemeyer gave a check for the price of the farm to Frank Frommeyer at the request of Mrs. Creghan, who desired it written that way because she could neither read nor write. Frank Frommeyer made a loan of $2,000, using $1,950 of the money which went to Mrs. Creghan for her farm and adding $50 of his own. The loan was secured by a deed of trust and fell due in 1891. Frommeyer collected the interest on it and accounted for the same to Mrs. Creghan until June or July, 1890, when there was a full accounting between the two, ending in an agreement that Frommeyer then had $1,625 in his hands belonging to his mother-in-law. From the date of this settlement, the original loan of $2,000 was treated by Frommeyer and Mrs. Creghan as belonging to the former and when the note fell due he collected it as his own. The sum turned over by Frommeyer to his mother-in-law at the settlement was kept by her for a week or so and was then lent by Mary Frommeyer, the daughter, through the agency of Matrom D. Lewis. To whom this loan was made does not appear. It seems that Mary Frommeyer took the money belonging to her mother with the latter's consent and adding $375 to it which she procured from her husband, Frank Frommeyer, turned over the total of $2,000 to Lewis and the latter lent it on real estate security. Whether the note taken for this loan was payable to Mrs. Creghan or to Mary Frommeyer, we have been unable to ascertain from the testimony; but it was delivered to Mrs. Creghan, who, after keeping it a while, gave it to Frank Frommeyer for safe-keeping, the trial court found. Frommeyer kept it until its maturity in September, 1904, when he collected the money and used it as his own. At the time the note matured and was collected, Mrs. Creghan had been dead about a year. The semiannual interest accruing on it had been paid to Mrs. Creghan by Frommeyer until she died. Mrs. Frommeyer testified that after her mother's death her

husband said the proceeds of the note belonged to him on account of the trouble and expense of taking care of his mother-in-law, but that she protested against her husband's claim and asserted that she, rather than he, was entitled to the money, because the burden of caring for her mother had fallen on her; that on her demand her husband paid her $1,200 which she invested in her own name. Besides money, Mrs. Creghan owned, at the time of her death, some clothing, spoons, a bed and other small articles of personal property which, after her death, her daughter Mary disposed of or used.

The foregoing statement is based, in the main, on the findings of fact by the trial court. It appears from the findings that Frommeyer had paid out $285 for the benefit of Mrs. Creghan and with her consent, before she died. He also paid, after her death, the expenses of her last illness and funeral, amounting to $335. The trial court allowed him credit for the $285 paid during her life, but refused to allow credit for the payments made after her death. According to these rulings Frommeyer has in his hands to be accounted for to the administrator of Mrs. Creghan's estate, the sum of $1625, which he had received from her, less $285, disbursed with her consent; that is to say, a balance of $1,340. Judgment was entered against him for said sum with interest thereon from date of Mrs. Creghan's death; or an aggregate of $2,244.50. The court adjudged that Frank Frommeyer was responsible for none of the articles of personal property which the deceased owned at her death.

This action was instituted against both Frank Frommeyer and his wife, Mary, but after the evidence had been taken the cause was dismissed as to the wife.

The original petition was in the nature of a bill of discovery, a remedy which is obsolete under our system of practice. The amended petition sounded in tort, and as it alleged the wrongful conversion by the defendants Frank and Mary Frommeyer of the money and property

of the deceased, and prayed damages for the tort, it was a complete departure; or rather the first statement of a cause of action; for the original petition stated none at all. The defendants joined issue on the amended petition by answering. It is true that afterwards a motion to strike out the petition was filed; but defendants' answer was still in, nor was leave asked to withdraw it. We are of the opinion that the judgment ought not to be reversed because the motion to strike out was overruled. [Matthews v. Perdue, 79 Mo. 149.]

The answer contained a general denial, a plea of misjoinder of parties defendant, that the two defendants were man and wife, and Mary Frommeyer, under the facts set forth in the amended petition, was entitled to judgment, and also a plea of the statute of limitation; that is to say, the five-year statute.

Plaintiff called to the witness stand both Frommeyer and his wife, and all the material testimony in the case was given by them. Against the objection of defendant Frank Frommeyer, his wife was permitted to testify to conversations between them and was practically turned into a witness against him. When an objection was made to this testimony, the court reversed its ruling; but subsequently overruled the objection and defendant Frommeyer saved an exception. Plaintiff made the defendants witnesses by virtue of the statute allowing a party to a civil action to compel an adverse party to testify as a witness under the rules applicable to a cross-examination. [R. S. 1899, sec. 4654.] While Mrs. Frommeyer was a defendant, plaintiff could avail himself of that statute; but her testimony was competent only against herself and not against her husband. [R. S. 1899, sec. 4656.] There is no showing that she was her husband's agent in dealings with the deceased, or of any other fact which made her a competent witness against him. Such statements of hers as tended to establish liability on his part and nothing more, were inadmissible; and this was especially true of private

conversations between the two. In truth, retaining Mrs. Frommeyer as a party until the evidence was in, thereby making it possible to use her as a witness against her husband, was unfair.

Though Frommeyer was called to the stand by the plaintiff's attorney, his own attorney was denied, practically, the right to cross-examine him in a way which would elicit anything to his advantage. The examination appears to have been conducted on the theory that plaintiff was entitled to make Frommeyer a witness for the purpose of compelling him to testify to transactions and conversations with the deceased so far as what he related was prejudicial to his case, and close his mouth regarding all matters which would be to his advantage. Where a party makes a witness of his adversary, who otherwise would be incompetent because the matter in controversy related to transactions between him and a deceased party, he becomes qualified to testify as fully as any other competent witness. [Borgess Inv. Co. v. Vette, 142 Mo. 560; 44 S. W. 754; Tomlinson v. Ellison, 104 Mo. 105; 16 S. W. 201.] It might prove ruinously unjust to a party's rights to force him to disclose the part of a conversation or dealing between him and a deceased person which tended to impose liability on him and refuse to let him relate a part that would exonerate him. Plaintiff's counsel insist that the excluded testimony which Frommeyer would have given, was irrelevant to the issues. Some of it was, but it is far from certain that it all was. Whenever he attempted to state a conversation which tended to show he had an arrangement with the deceased which entitled him to keep, as his own, the fund intrusted to him, he was stopped by an objection which the court sustained. In illustration we quote from the record:

"Q. You say that you and she talked over the matter from time to time prior to her death? A. Yes, sir.

"Q. As to how you two were standing. A. Yes, sir.

115 app—15

"Q.  Just tell the court with reference to that what you remember as to what she said and as to what you said.

"Mr. Mudd:  I object to that on the ground that it is not competent for this witness at this time to relate in this case the conversations between him and the deceased Mrs. Creghan with respect to the handling of these moneys.

"The court sustained the objection, to which ruling the defendant then and there excepted.  . . .

"Q.  At any time prior to the death of Mrs. Creghan, did you and she, and after this one settlement that you speak of, did you and she ever talk over the affairs between yourself and herself as to how you stood with her and she with you, and if so, what is your recollection that you now have as to those conversations; give all you remember.

"Mr. Mudd:  I object to that as incompetent because this witness cannot now and here relate conversations between him and the deceased, Mrs. Greghan, with respect to those transactions about which the witness is asked.

"The court sustained the objection, to which ruling defendants then and there excepted at the time.

"Q.  At the time of Mrs. Creghan's death and before the funeral bills and expenses of her last illness were paid, if at all by you, how much did you owe Mrs. Creghan?

"Mr. Mudd:  I object to that because it is not competent for this witness to state the account between himself and Mrs. Creghan in that manner.  The question is of a compound nature.

"The Court:  I do not understand what you are driving at.  This witness has stated already that upon this last loan he collected the interest and paid the interest to Mrs. Creghan; that he didn't owe her anything on that account.  He testified that he collected the interest on this note that was given by Lewis or was obtained

from Lewis and paid that interest to Mrs. Creghan up to the time of her death. So that he owed her nothing on account of this transaction. As to other matters it is irrelevant.

"Defendant then and there excepted to the ruling of the court at the time.

"Q. How much money was there, if any, in your hands due from you to Mrs. Creghan at the time of Mrs. Creghan's death?

"Mr. Mudd: I object to that question.

"The Court: That is another form of the same question, isn't it.

"Mr. Otto: Well, now, that is for your honor to decide.

"Mr. Mudd: I object on the ground that it is not for this witness to state the account in that manner between him and Mrs. Creghan.

"The Court: I do not think the testimony is admissible."

The above questions appear to us to have called for relevant testimony; which, moreover, was competent as coming within the scope of legitimate cross-examination. If Frommeyer had an understanding with the deceased by which he became the owner of the money she intrusted to him, he ought to have been permitted to state it, after plaintiff had made him a witness and compelled him to testify to so much of the affairs between him and the deceased as suited plaintiff's interest. Besides, it looks like some of the conversations between Frommeyer and Mrs. Creghan, which his attorney endeavored to prove by him, went to show that prior to Mrs. Creghan's death he had become her debtor for the money intrusted to him; that is to say, that though the sum of $1,625 may have come into his hands as bailee, he was afterwards recognized as the owner of the money, or the note in which it was invested, and as owing Mrs. Creghan himself. If this was true, the statute of limitations began to run during the lifetime of the deceased and an

action for the money would be barred. Moreover, in that contingency, the action to recover it would have to be assumpsit instead of trover. Just what the facts are about these several matters we do not undertake to say; but are quite certain that the cross-examination of Frommeyer by his counsel was unduly restricted.

The judgment is reversed and the cause remanded. All concur.